CC-2003-185                                    1

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Juan Roberto García Benavente<br><br>    Querellante<br><br>          v.<br><br>Aljoma Lumber, Inc.<br><br>    Querellado | Certiorari<br><br>2004 TSPR 125<br><br>162 DPR ____ |

Número del Caso: CC-2003-185

Fecha: 21 de julio de 2004

Tribunal de Circuito de Apelaciones:

                Circuito Regional V

Juez Ponente:
                Hon. Hiram A. Sánchez Martínez


Abogados de la Parte Querellada:

                Lcdo. Juan M. Aponte Castro
                Lcdo. Jesús Antonio Rodríguez Urbano

Abogado de la Parte Querellante:

                Lcdo. Víctor M. Rivera Torres


Materia: Despido Ilegal


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Juan Roberto García
Benavente

   Querellante

   v.                                    CC-2003-185      Certiorari

Aljoma Lumber, Inc.

   Querellado


Opinión del tribunal emitida por el Juez Asociado señor
Hernández Denton

San Juan, Puerto Rico, a 21 de julio de 2004.

Debemos determinar si un obrero que es despedido por ausentarse de su trabajo por razón de enfermedad no ocupacional tiene una reclamación de daños y perjuicios contra su patrono al amparo de la Sección 16 del Artículo II de la Constitución del Estado Libre Asociado de Puerto Rico que protege a todo trabajador contra riesgos para su salud o integridad personal en el empleo.

I

El señor Roberto García Benavente (en adelante señor García Benavente) presentó una querella contra Aljoma Lumber, Inc. (en adelante Aljoma Lumber) ante el Tribunal de Primera Instancia al amparo del procedimiento sumario

laboral que regula la Ley Núm. 2 de 17 de octubre de 1961, según enmendada, 32 L.P.R.A. sec. 3118 *et seq.* Alegó que era empleado sin tiempo determinado de Aljoma Lumber desde 1998; que se desempeñó como operador de monta carga (fingerlift) de dicha empresa hasta el 7 de febrero de 2000, cuando fue despedido por ausentarse de su trabajo por varios días; que dicho despido fue injustificado porque sus ausencias se debieron a que estaba enfermo y así lo evidenció mediante certificación médica. Alegó además, que bajo estas circunstancias, la actuación del patrono al despedirlo violó la Sección 16 del Artículo II de la Constitución del Estado Libre Asociado de Puerto Rico que protege a todo trabajador contra riegos para su salud o integridad personal en el empleo. Conforme a ello, reclamó los daños y perjuicios ocasionados por el patrono como consecuencia de la violación de dicha política pública constitucional. Solicitó indemnización por violación a sus derechos civiles y por las angustias mentales sufridas, los salarios dejados de devengar y reposición a su empleo.

De los documentos que constan en el expediente no surge que el señor García Benavente haya reclamado que su alegado padecimiento fuera consecuencia de un accidente de trabajo o que se tratara de una incapacidad no ocupacional temporal conforme lo disponen el Art. 5a de la Ley de Compensaciones por Accidentes del Trabajo[1] y la Ley de

---

[1] Ley Núm. 45 de 18 de abril de 1935, según enmendada, 11 L.P.R.A. sec. 7.

Beneficios      por      Incapacidad      Temporal      -SINOT-

respectivamente.[2]

En su contestación a la querella, Aljoma Lumber

sostuvo que despidió al señor García Benavente porque éste

abandonó su trabajo injustificadamente el 7 de febrero de

2000 al notificársele que ese mismo día se realizarían

pruebas de dopaje. Según Aljoma Lumber, García Benavente

se reportó a trabajar como de costumbre y al enterarse que

sería sometido a una prueba de detención de drogas,

abandonó el trabajo sin notificarlo a sus supervisores.

Posteriormente, Aljoma Lumber solicitó al tribunal de

instancia que desestimara los remedios solicitados en la

querella por ser improcedentes en derecho y que continuara

el caso bajo la Ley Núm. 80 de 30 de mayo de 1976, 29

L.P.R.A. sec. 185a *et seq*. Por su parte, el señor García

Benavente se opuso a la desestimación y alegó que el día de

los hechos aquí en controversia fue a su trabajo y

efectivamente le notificó a su supervisor que se ausentaría

para recibir asistencia médica. Reiteró, además, que su

reclamación procedía a la luz de los pronunciamientos de

este Tribunal en <u>Arroyo v. Rattan Specialties, Inc</u>., 117

D.P.R. 35 (1986).

Así las cosas, el tribunal de instancia dictó

sentencia parcial[3] y desestimó por improcedentes en derecho

---

[2] Ley Núm. 139 de 26 de Junio de 1968, según enmendada, 11
L.P.R.A. sec. 201 *et seq*.

[3] El tribunal de instancia ordenó el archivo y notificación
de esta sentencia parcial y expresó que no existía razón

los remedios adicionales a la mesada solicitados en la querella. Oportunamente, el señor García Benavente acudió ante el Tribunal de Apelaciones[4] y reiteró su derecho a recibir indemnización al amparo de la Sección 16 del Art. II de la Constitución del Estado Libre Asociado de Puerto Rico.

Por su parte, el tribunal apelativo intermedio revocó al tribunal de instancia al concluir que el despido de un empleado por ausentarse varios días de su trabajo por razón de enfermedad constituye una reclamación válida, derivada de la Constitución, que justifica la concesión de indemnización por los daños y perjuicios causados y la reinstalación al empleo. Dicho foro resolvió que el derecho a la vida garantizado en la Sección 7 del Artículo II de la Constitución comprende el derecho a un empleo.[5] Se expresó

---

alguna para posponer dictar la misma hasta la resolución final del caso.

[4] Para entonces, el ahora Tribunal de Apelaciones se llamaba Tribunal de Circuito de Apelaciones. No obstante, haremos referencia a dicho tribunal como Tribunal de Apelaciones conforme se dispone en la Ley de la Judicatura de 2003, Ley Núm. 201 de 22 de agosto de 2003, y el Reglamento Transitorio Para el Tribunal de Apelaciones aprobado el 18 de noviembre de 2003, 2003 TSPR 167.

[5] La Sección 7 del Artículo II de la Constitución del Estado Libre Asociado de Puerto Rico dispone que:

> Se reconoce como derecho fundamental del ser humano el derecho a la vida, a la libertad y al disfrute de la propiedad. No existirá la pena de muerte. Ninguna persona será privada de su libertad o propiedad sin debido proceso de ley, ni se negará a persona alguna en Puerto Rico la igual protección de las leyes. No se aprobarán leyes que menoscaben las obligaciones

en la sentencia recurrida que el derecho "a devengar ingresos y a tener una vida justa y decente, es un principio inalienable al hombre, preexistente a la más antigua de las constituciones"; *citando a* <u>Amy v. Adm.</u> <u>Deporte Hípico</u>, 116 D.P.R. 414 (1985) y el Art. 23 de la *Declaración Universal de los Derechos Humanos* de la ONU que reconoce el derecho al trabajo.    Además, el tribunal apelativo expresó que consustancial con el derecho a la vida reconocido en la referida Sección 7 "es el derecho de todo trabajador a la protección contra riesgos para su salud o integridad personal en su trabajo o empleo". Se concluyó que al patrono requerirle al empleado que asista a su trabajo a pesar de estar enfermo o en trámites relacionados con el diagnóstico o tratamiento de alguna enfermedad, *so pena* de despido, "constituye un atentado a la salud o integridad corporal de dicho trabajador".

Inconforme con el dictamen del Tribunal de Apelaciones, Aljoma Lumber acudió ante nos.    Examinada su petición, expedimos el auto de *certiorari* solicitado.    Con el beneficio de la comparecencia de ambas partes, procedemos a resolver el caso de autos.

Debemos determinar, si la cláusula constitucional contra riesgos para la salud o integridad personal del trabajador en su lugar de empleo es fundamento para una

_____

contractuales. Las leyes determinarán un mínimo de propiedad y pertenencias no sujetas a embargo.

reclamación de reinstalación y daños y perjuicios contra el patrono cuando el trabajador es despedido por ausentarse por razón de enfermedad.

II

A

En contemplación a la aprobación de la Carta de Derechos de la Constitución del Estado Libre Asociado de Puerto Rico se consideró que ésta debía contener, como mínimo, todos los derechos concedidos por la Carta Orgánica de 1917 –Ley Jones– y que en lo posible, se debía utilizar el mismo lenguaje de la ley Jones, o la Constitución de Estados Unidos, para aprovechar su interpretación histórica. José Trías Monge, 3 *Historia Constitucional de Puerto Rico*, Río Piedras, Ed. Universitaria, 1982, pág. 170. Se propuso, además, ampliar los derechos reconocidos tradicionalmente e incluir nuevos derechos económicos y sociales inspirados en la Declaración Universal de los Derechos del Hombre, adoptada por la Asamblea General de las Naciones Unidas en 1948, y en la Declaración Americana de los Derechos y Deberes del Hombre, aprobada por la IX Conferencia Internacional Americana. *Id*. Estas consideraciones fueron efectivamente implementadas al redactar y adoptar la Carta de Derechos de la Constitución. *La Nueva Constitución de Puerto Rico*, Escuela de Administración Pública, Universidad de Puerto Rico, Río Piedras, Ed. U.P.R., 1954, págs. 119 *et seq*.

Consiguientemente, la Carta de Derechos resultó en un cuerpo de disposiciones que puede dividirse en dos grupos de garantías de naturaleza distinta. En el primer grupo se disponen explícitamente los derechos y garantías tradicionalmente reconocidas a los ciudadanos de los Estados Unidos redactadas de manera claramente exigibles. En el segundo grupo, se exponen ciertos derechos sociales y económicos que el Estado reconoce y se compromete a hacer lo posible para concretizar. A. Fernós-Isern, *Notes and Comments on the Constitution of the Commonwealth of Puerto Rico*, Washington, D.C., 1952, pág. 34.

El primer grupo de garantías tradicionales de la Carta de Derechos de la Constitución incluye derechos como el derecho a un juicio rápido y público, el privilegio a no autoincriminarse, protección contra la doble exposición, derecho a la fianza, prohibición de castigos crueles e inusitados y multas excesivas, *habeas corpus*, cláusula de igual protección de las leyes y del debido proceso de ley, libertad de religión y culto, prohibición sobre títulos de nobleza y leyes *ex post facto*, entre otros derechos reconocidos en la Constitución de Estados Unidos. *La Nueva Constitución de Puerto Rico*, *supra*, págs. 141 *et seq*. Por su parte, el segundo grupo, que dispone las garantías constitucionales que no estaban incluidas en la Ley Jones, recoge la declaración de igualdad del hombre e inviolabilidad de la dignidad del ser humano, derecho a la intimidad, prohibición de ciertos discrímenes, derecho de

asociación, derecho al sufragio, derecho a la educación, derechos de los trabajadores[6] y otros derechos de seguridad social. *La Nueva Constitución de Puerto Rico*, *supra*, págs. 216 *et seq*. La inclusión de estos **derechos nuevos** en la Constitución del Estado Libre Asociado de Puerto Rico respondió al entendimiento de que para el tiempo del estudio y adopción de la Constitución:

> [l]a gente de Puerto Rico [había] demostrado persistentemente, tanto en la ideología como en la práctica, que tiene fe en los valores fundamentales de la tradición liberal, en la libertad y dignidad del individuo como último punto de referencia valorativa para la organización social. *La Nueva Constitución de Puerto Rico*, *supra*, pág. 216.

B

Entre estos *derechos nuevos* que reconoce la Carta de Derechos de la Constitución del Estado Libre Asociado de Puerto Rico, se destacan los derechos de los trabajadores.[7] La Constitución garantiza de manera particular a la clase trabajadora del País el derecho a escoger libremente su ocupación y a renunciar a ella a su conveniencia, a igual paga por igual trabajo, a un salario mínimo razonable, a un máximo de (8) horas diarias de trabajo y al pago de compensación adicional por lo trabajado en exceso de éstas

---

[6] En cuanto a los trabajadores, la Ley Jones se limita a reconocer que "[o]cho horas constituirán un día de trabajo en todos los casos en que se empleen en obras públicas trabajadores y mecánicos por el Gobierno de la Isla o en nombre del mismo, excepto en casos de emergencia".

[7] Para una discusión de esta categoría de derechos económicos, *véase*, Jaime B. Fuster Belingeri, *Derechos Fundamentales y Deberes Cívicos de las Personas*, Comisión de Derechos Civiles, 2001, pág. 204 *et seq*.

a razón de por lo menos una vez y media el salario ordinario. Const. de P.R., Art. II, Sec. 16. Esta misma Sección 16 dispone también el derecho de todo trabajador "a protección contra riegos para su salud o integridad personal en su trabajo o empleo". De otra parte, las Secciones 17 y 18 de la Carta de Derecho establecen el derecho de los trabajadores del sector privado y de instrumentalidades o agencias públicas que funcionen como negocios privados a celebrar actividades concertadas legales, a organizarse y a negociar colectivamente con su patrono para el bienestar común.[8] Se prohíbe la esclavitud y las servidumbres involuntarias así como el empleo de menores de catorce (14) años cuando ello sea perjudicial a la salud o la moral. Const. de P.R., Art. II, Secs. 12 y 15.

Además de estas garantías constitucionales dirigidas específicamente a los trabajadores, la Constitución dispone otros derechos que de igual forma protegen a los ciudadanos en el ámbito laboral, como por ejemplo, el derecho a la intimidad en la esfera del empleo público y privado, y la igual protección de las leyes, el debido proceso de ley, libertad de expresión, asociación y reunión frente al Estado como patrono. Const. de P.R., Art. II, Secs. 1, 4, 6, 7, 8.

_____

[8] Para una discusión de la procedencia de los derechos constitucionales de la clase trabajadora puertorriqueña, *véase*, David M. Helfeld, *La Política Laboral Constitucional del 1952: Sus Principios Esenciales y los Factores que la Influenciaron*, 72 Rev. Jur. U.P.R. 143 (2003).

En atención a las citadas disposiciones constitucionales, la Asamblea Legislativa de Puerto Rico ha aprobado múltiples leyes para instrumentar los derechos allí reconocidos o para ampliar el alcance de su protección a relaciones laborales entre personas privadas y para disponer remedios prácticos en beneficio de los trabajadores. Así, a manera de ilustración, se aprobó la Ley de Salario Mínimo, Vacaciones y Licencia por Enfermedad de Puerto Rico, Ley Núm. 180 de 27 de julio de 1998, 29 L.P.R.A. sec. 250 *et seq.*, que dispone todo lo concerniente a la jornada de trabajo, al pago de salario y licencias por vacaciones y enfermedad. En cuanto a la protección de la salud del trabajador, se aprobó la Ley de Seguridad y Salud en el Trabajo, Ley Núm. 16 de 5 de agosto de 1975, según enmendada, 29 L.P.R.A. sec. 361 *et seq.*, que impone la obligación al patrono de proveer un ambiente de trabajo libre de riesgos para la salud. También existe la Ley Núm. 230 de 12 de Mayo 12 de 1942, según enmendada, 29 L.P.R.A. sec. 431 *et seq.*, que regula el empleo de menores. Por su parte, la Ley de Compensación por Accidentes del Trabajo, *supra*, en términos generales, provee tratamiento médico y ayuda económica al trabajador que sufre un accidente en el trabajo, o ayuda económica a sus dependientes en caso de muerte, sin que haya que acudir a la vía judicial a demandar al patrono. Para casos en que el trabajador sufre una lesión no relacionada a su trabajo, se aprobó la Ley de Beneficios por Incapacidad Temporal No Ocupacional, *supra*.

Estas dos (2) últimas leyes citadas disponen la reserva del empleo por un período determinado mientras el trabajador recupera su salud. *Véase*, Art. 5a de la Ley de Compensación por Accidentes del Trabajo, *supra*, y la sección 3 de la Ley de Beneficios por Incapacidad Temporal No Ocupacional, 11 L.P.R.A. sec. 203(q).

De igual forma, la Asamblea Legislativa ha aprobado leyes para prohibir el discrimen y el hostigamientos sexual en el empleo y para implementar el derecho de los trabajadores a organizarse colectivamente. *Véase*, Ley Núm. 100 de 30 de junio de 1959, según enmendada, 29 L.P.R.A. sec. 146 *et seq.*; Ley Núm. 17 de 22 de abril de 1988, 29 L.P.R.A. sec. 155 *et seq.*; y Ley de Relaciones del Trabajo de Puerto Rico, Ley Núm. 130 de 8 de Mayo de 1945, 29 L.P.R.A. sec. 61 *et seq.* Además, el trabajador puertorriqueño tiene la protección de la Ley Núm. 80 de 1976, *supra*, la cual penaliza el despido injustificado.

Las leyes citadas ejemplifican parte de la política pública constitucional que instituyó la Asamblea Legislativa para proveer a la clase trabajadora remedios prácticos administrativos y judiciales cuando el patrono incumple con sus obligaciones estatutarias y las impuestas por la Constitución del Estado Libre Asociado de Puerto Rico.

C

Las consecuencias del incumplimiento por parte del patrono de estas leyes laborales y las respectivas

disposiciones constitucionales varían de caso a caso dependiendo de lo provisto por la Asamblea Legislativa y de la naturaleza de la garantía constitucional de la que se trate. Como norma general, el obrero contratado sin término fijo que es despido sin justa causa tiene derecho al remedio de la mesada que provee la Ley Núm. 80, *supra*. Acevedo v. Western Digital Caribe, Inc., 140 D.P.R. 452 (1996); Porto y Siurano v. Bentley P.R., Inc., 132 D.P.R. 331 (1992); Soc. de Gananciales v. Royal Bank de P.R., 145 D.P.R. 178 (1998); Biver v. Coop. Fed. Emp. Telefónicos, 145 D.P.R. 165 (1998); Díaz Fontánez v. Wyndham Hotel Corp., res. el 24 de octubre de 2001, 2001 TSPR 141; Soc. de Gananciales v. Centro Gráfico, 144 D.P.R. 952 (1998). De acuerdo a esta legislación, el obrero despedido injustificadamente sólo puede reclamar cierta indemnización preestablecida en la ley misma.[9] *Véase*, casos anteriormente citados; Ruy N. Delgado Zayas, *Apuntes para el Estudio de La Legislación Protectora del Trabajo en el Derecho Laboral*

---

[9] La ley dispone que el patrono deberá indemnizar al empleado por el sueldo que hubiere devengado en adición a una suma equivalente a una semana por cada año de servicio más:

> [E]l sueldo correspondiente a un mes por concepto de indemnización; si el despido ocurre dentro de los primeros cinco (5) años de servicio; el sueldo correspondiente a dos (2) meses si el despido ocurre luego de los cinco (5) años hasta los quince (15) años de servicio; el sueldo correspondiente a tres (3) meses si el despido ocurre luego de los quince (15) años de servicio. 29 L.P.R.A. sec. 185a.

*Puertorriqueño*, 2001, San Juan, pág. 115. Díaz Fontánez v. Wyndham Hotel Corp., *supra*.

Ahora, la exclusividad del remedio provisto en la Ley Núm. 80, *supra*, no aplica cuando el legislador establece situaciones particulares bajo las cuales un obrero simplemente no puede ser despedido, como por ejemplo, en los casos de reclamaciones laborales que surgen por discrimen por razón de edad, sexo, color, raza, origen o condición social, ideas políticas, ideas religiosas, origen nacional y por razón de matrimonio o razón de embarazo, provistas en la Ley Núm. 100 de 30 de junio de 1959, *supra*, y Ley Núm. 3 de 13 de marzo de 1942, según enmendada, 29 L.P.R.A. sec. 147 *et seq.*; por la colaboración o expresiones que haga un empleado en una investigación ante cualquier foro administrativo, judicial o legislativo en Puerto Rico, según lo dispone la Ley Núm. 115 de 20 de diciembre de 1991, 29 L.P.R.A. sec. 194 *et seq.*; por hostigamiento sexual en el empleo, Ley Núm. 17 de 22 de abril de 1988, *supra*; por despedir al obrero que sufrió un accidente en el trabajo o contrajo una enfermedad en el trabajo en violación al Art. 5a de la Ley de Compensaciones por Accidentes del Trabajo, *supra*; entre otras. *Véase además*, Díaz Fontánez v. Wyndham Hotel Corp., *supra*; Vélez Rodríguez v. Pueblo Int´L, Inc., 135 D.P.R. 500, 511-513; Delgado Zayas, *supra*, a las págs. 112, 114. En estos casos, los remedios incluyen la reinstalación al empleo, los salarios dejados de percibir y, como norma general, los

daños que el despido ocasionó además de, en ciertas ocasiones, otra suma igual por concepto de penalidad. Delgado Zayas, *supra*, a la pág. 115.

Asimismo, cuando en ocasión del despido del obrero el patrono incurre en actuaciones torticeras que son independientes al evento del despido mismo, surge una causa de acción a favor del obrero por dicha conducta ilegal. Acevedo v. Western Digital Caribe, Inc., *supra*; Porto y Siurano v. Bentley P.R., Inc., *supra*; Rivera v. Security Nat. Life Ins., 106 D.P.R. 517 (1977). Esta norma responde al entendimiento de que los remedios de las leyes de trabajo "no excluyen la responsabilidad civil de un patrono por conducta torticera en que incurriere por otros motivos que no sean la mera violación de [estas leyes]..." Así, en Arroyo v. Rattan Specialties, *supra*, reconocimos que cuando el despido se hace con el propósito o tiene el efecto de subvertir una clara política pública, como ocurre en el caso de violación de ciertos derechos constitucionales del obrero, surge una reclamación de daños y perjuicios en contra del patrono. *Véase además*, Porto y Siurano v. Bentley P.R., Inc., *supra*; Soc. de Gananciales v. Royal Bank de P.R., *supra*.

En el caso de autos, el señor García Benavente reclama que su despido, además de injustificado, fue en violación a su derecho constitucional a estar protegido contra riegos para su salud o integridad personal en el empleo, lo cual constituye una clara política pública. Por lo tanto,

solicita reinstalación a su trabajo, más los daños y perjuicios ocasionados conforme a la normativa señalada anteriormente.

La controversia ante nos requiere que le impartamos significado práctico a la referida Sección 16 de la Carta de Derechos y que pasemos juicio sobre la existencia del derecho constitucional a obtener un empleo y la correspondiente acción de daños y perjuicios que reconoció el Tribunal de Apelaciones en el caso de autos.  Veamos.

III

La Sección 16 del Artículo II de la Constitución aquí en controversia dispone:

> [...] el derecho de todo trabajador a escoger libremente su ocupación y a renunciar a ella, a recibir igual paga por igual trabajo, a un salario mínimo razonable, **a protección contra riesgos para su salud o integridad personal en su trabajo o empleo**, y a una jornada ordinaria que no exceda de ocho horas de trabajo. Sólo podrá trabajarse en exceso de este límite diario, mediante compensación extraordinaria que nunca será menor de una vez y media el tipo de salario ordinario, según se disponga por ley.  Const. P.R., Art. I, Sec. II. (Énfasis suplido).

La Sección 16, así como la Sección 18, extiende el concepto de libertad del ámbito político al contexto económico, social e industrial de los tiempos modernos. Fernós-Isern, *supra*, a la pág. 45.  Al proponer los derechos de los trabajadores, la Comisión de Cartas de Derechos de la Asamblea Constituyente señaló la "alta dignidad" del esfuerzo humano y recalcó que el énfasis de los derechos propuestos recaía "en aquel grueso de la clase trabajadora que por razón de especial desvalimiento

históricamente ha necesitado, aunque no siempre ha recibido, protección social". *Diario de Sesiones de la Convención Constituyente de Puerto Rico*, *supra*, Tomo IV, pág. 2573.

Como toda nuestra Carta de Derechos, dicha Sección 16 tiene como base la Declaración Universal de los Derechos del Hombre. Pueblo v. Santiago Feliciano, 139 D.P.R. 361 (1995). En este caso, la Convención Constituyente tomó como modelo el contenido de los Artículos 23 y 24 de la Declaración Universal de los Derechos del Hombre para redactar la Sección 16 del Artículo II de nuestra Constitución. Trías Monge, *supra*, a la pág. 201.[10]

Aunque el Diario de Sesiones de la Convención Constituyente contiene amplias discusiones sobre algunos de los derechos de los trabajadores, como el derecho a huelga

---

[10] Dichos Artículos disponen:

Artículo 23:
1. Toda persona tiene derecho al trabajo, a la libre elección de su trabajo, a condiciones equitativas y satisfactorias de trabajo y a la protección contra el desempleo.
2. Toda persona tiene derecho, sin discriminación alguna, a igual salario por trabajo igual.
3. Toda persona que trabaja tiene derecho a una remuneración equitativa y satisfactoria, que le asegure, así como a su familia, una existencia conforme a la dignidad humana y que será completada, en caso necesario, por cualesquiera otros medios de protección social.
4. Toda persona tiene derecho a fundar sindicatos y a sindicarse para la defensa de sus intereses.

Artículo 24:
Toda Persona tiene derecho al descanso, al disfrute del tiempo libre, a una limitación razonable de la duración del trabajo y a vacaciones periódicas pagadas.

y la prohibición del empleo de menores de catorce (14) años, no hay discusión en cuanto al significado de la protección del trabajador "contra riesgos para su salud o integridad personal en su trabajo o empleo", asunto aquí en controversia.  No encontramos en el Diario de Sesiones discusión que precise cuál es el significado de este lenguaje en particular.  De igual forma, la Declaración Universal de los Derechos del Hombre no hace mención al respecto.  Lo mismo ocurre con el Artículo 2 de la Ley Jones, que también se consideró al redactar dicha sección. 1 L.P.R.A. sec.  El artículo pertinente de la Carta Orgánica sólo hace referencia al término de ocho (8) horas de trabajo y al empleo de niños menores de catorce años. No menciona los demás derechos incluidos en la Sección 16 de la Carta de Derechos de la Constitución referente a los trabajadores, como por ejemplo, el derecho a estar protegido contra riesgos para su salud o integridad personal en el trabajo o empleo.

Es significativo, no obstante, que el texto de la hoy Sección 16 del Artículo II que recomendó la Comisión de Carta de Derechos de la Convención Constituyente no incluía el término *integridad personal*. *Diario de Sesiones de la Convención Constituyente de Puerto Rico*, *supra*, Tomo II, pág. 1102, Tomo III, pág. 1607; Tomo IV, págs. 2560, 2573. En el texto propuesto en el Informe de la Comisión de Carta de Derechos se reconocía el derecho de todo trabajador a **"protección contra riesgos a su salud <u>o a su persona</u> en su**

**trabajo o empleo"**. (Énfasis suplido). *Véase*, *Diario de Sesiones de la Convención Constituyente de Puerto Rico*, *supra*, Tomo IV, págs. 2560, 2573, Tomo II, pág. 1102 y Tomo III, pág. 1607; José Trías Monge, *supra*, pág. 201.

Empero, dicho texto se modificó para disponer "protección contra riesgos para su salud o a *su integridad personal*". Este cambio, sin embargo, no se explica en el Diario de Sesiones de la Convención Constituyente.[11] Luego de que se leyera y discutiera el Informe de la Comisión de Carta de Derechos y se discutieran varios de los derechos de los trabajadores, en el Diario de Sesiones se reproduce el texto de la Sección 16, Artículo II, con el término "integridad personal" en lugar de "persona" sin explicación mayor. *Diario de Sesiones de la Convención Constituyente de Puerto Rico*, *supra*, Tomo IV, pág. 2432.

No obstante, este Tribunal ha tenido la oportunidad de definir de cierta manera el alcance de la referida cláusula constitucional. En <u>Arroyo v. Rattan Specialties</u>, *supra*, examinamos el reclamo constitucional de un obrero a estar protegido contra riegos para su salud e integridad

---

[11] La traducción oficial en inglés de la Sección 16 del Artículo **que también aprobó la Convención Constituyente tampoco incluyó una traducción específica del término "integridad personal".** Dicho texto lee:

> **The right of every employee** to choose his occupation freely and to resign therefrom is recognized, as is his right to equal pay for equal work, to a reasonable minimum salary, **to protection against risks to his health or <u>person</u> in his work or employment,** and to an ordinary workday which […]. (Énfasis suplido). *Diario de Sesiones de la Convención Constituyente de Puerto Rico*, *supra*, Tomo IV, pág. 2449.

personal, entre otras cosas, frente a la intención del patrono demandado de someterlo a una prueba de polígrafo. En esa ocasión resolvimos que la protección constitucional contra riesgos a la integridad personal del trabajador opera *ex proprio vigore* y puede hacerse valer aún entre personas privadas. *Id*., a la pág. 64. Al así resolver, igualamos el carácter y primacía del derecho a la intimidad con dicha protección constitucional. *Id*. Expresamos además que:

> Los derechos a la dignidad, **integridad personal** e intimidad son derechos constitucionales fundamentales que gozan de la más alta jerarquía y constituyen una crucial dimensión en los derechos humanos. Su protección es necesaria para que se pueda lograr una adecuada paz social o colectiva. Una persona respetada en su intimidad y dignidad --que no es otra cosa que el amplio y, en ocasiones, complejo mundo interior individual-- sentirá y vivirá y la paz, el respeto y la consideración merecida por todo ser humano en una sociedad. Es de esperarse, pues, que esos mismos sentimientos, vitales para una ordenada, racional y pacífica convivencia social, sean proyectados de manera efectiva a nuestro orden social.
>
> [...]
>
> En ausencia de circunstancias especiales que configuren intereses apremiantes del Estado, nuestra sociedad requiere que inclinemos la balanza en favor de la protección de los derechos del obrero a la intimidad, dignidad y a estar protegido contra riesgos para su integridad personal en el trabajo, frente al derecho del patrono al disfrute de su propiedad privada. (Énfasis suplido). <u>Arroyo v. Rattan Specialties</u>, *supra*, a la pág. 62, 63. (Énfasis suplido).

De esta manera, reconocimos que la conducta del patrono violaba una clara política pública constitucional,

lo cual daba lugar a una reclamación de daños y perjuicios y solicitud de *injunction* a favor del obrero.

IV

De la discusión anterior se desprende que las motivaciones que llevaron a la Convención Constituyente a aprobar la Sección 16 de nuestra Carta de Derechos, como a los demás derechos constitucionales de los trabajadores, estaban enfocadas en otorgar una protección amplia a la clase trabajadora hasta entonces desprotegida. No se quiso limitar la protección al ámbito del bienestar físico del trabajador. Es razonable concluir por consiguiente, y en vista de la ausencia de historial legislativo, que en el contexto de la Sección 16 de la Carta de Derechos, "integridad personal" y "salud" son dos conceptos distintos. Con ello se buscó proteger tanto la salud del obrero como su integridad. El vocablo "integridad" tiene su raíz en la palabra latina *integritas* (*de integer*, o sea, de íntegro) que significa "hecho de estar intacto, totalidad, conjunto". *Diccionario Latino-Español Español-Latino*, Agustín Blánquez Fraile, Ed. Ramón Sopena, S.A., Barcelona, 1988. L

La Real Academia Española define "Integridad" como: "calidad de íntegro"; "pureza de las vírgenes". "Íntegro", por su parte, se define como "aquello que no le falta ninguna de sus partes"; "dícese del recto, probo intachable". Real Academia Española, *supra*. Es esta última acepción que entendemos significó para los Constituyentes

la palabra integridad unida al vocablo "personal".[12] Por lo tanto, el significado de "integridad personal" debe entenderse con mayor amplitud que el concepto de "salud".

La protección que se ofrece contra riesgos a la "integridad personal" del obrero, se refiere a la inviolabilidad de la persona del obrero en la esfera de los valores abstractos como, su vida privada, pensamientos y creencias. Por su parte, el concepto "salud" trata el bienestar físico o integridad corporal o física del obrero en el ámbito laboral. De lo contrario, no tendría sentido la utilización de los vocablos "salud" e "integridad personal" con la conjunción disyuntiva "o" intercalada. El propio texto constitucional así lo señala: **"protección contra riesgos para su salud o integridad personal"**. Lo segundo es una protección a valores abstractos, como son la reputación, la vida privada y el buen nombre. Mientras que "salud" se refiere a lesiones corporales o mentales relacionadas al trabajo.

Otro factor que abona a la conclusión de que "integridad personal" se refiere a lesiones a la reputación o la dignidad humana del obrero en su lugar de trabajo o empleo, es el hecho de que el texto que originalmente propuso la Comisión de Carta de Derechos de la Convención Constituyente no incluía la palabra "integridad". La propuesta de la Comisión proveía protección a todo

---

[12] "Personal" significa, en la primera acepción que señala el diccionario, "perteneciente a la persona o propio o particular de ella". Real Academia Española, *Diccionario de la Lengua Española*, *supra*.

trabajador **"contra riegos a su salud o <u>a su persona</u> en su trabajo o empleo"**. Esto demuestra que se buscaba proteger al obrero tanto en el ámbito práctico de la salud física y mental, como el ámbito de los valores sociales que éste aprecia, como es su intimidad o privacidad.

Si bien la Sección Primera del Artículo II, que dispone la inviolabilidad de la dignidad del ser humano, aplica a todos los ciudadanos, se puede entender de igual forma que se intentó reforzar dicha protección en el ámbito laboral con la disposición en la Sección 16 referente a la protección de la "integridad personal" del obrero. Ello, como consecuencia del patente desbalance de poder que existía entre la clase trabajadora y los patronos en el momento histórico en que se aprobó la Constitución.

Consistente con lo anterior, el concepto de "integridad personal" también lo hemos utilizado en otros contextos para significar, no lesiones corporales, sino más bien menoscabo a la vida privada de una persona, ya sea como consecuencia de ataques a su dignidad o a su reputación. *Véase*, <u>Soc. de gananciales v. Royal Bank de P.R.</u>, *supra*, (no existe una causa de acción de daños y perjuicios por violación a las secciones 1, 8 y 16 de la Carta de Derechos sobre la dignidad del ser humano, derecho a la intimidad y protección del trabajador contra riesgos para su salud o a su integridad personal en el empleo, cuando el patrono no difundió indiscriminadamente información falsa, íntima o personal, ni incurrió en

actuación que incidiera irrazonablemente sobre la tranquilidad familiar o personal del empleado, o que limitara la facultad de éste para tomar decisiones sobre su vida íntima o familiar); Pueblo v. Arocho Soto, 137 D.P.R. 762 (1994) ("el derecho a la intimidad y a la integridad personal de la víctima" de delito limita el uso de exámenes psicológicos por parte del acusado dentro del procedimiento criminal); Cotto Morales v. Calo Ríos, 140 D.P.R. 604 (1996) (entre los derechos de la personalidad del autor de una obra de arte se encuentran el derecho a la propia identidad, al nombre, a la reputación personal, a la integridad de la propia persona y a la intimidad); Vega Rodríguez v. Telefónica de P.R., res. el 17 de abril de 2002, 2002 TSPR 50, (el sistema de video-grabación utilizado por el patrono no viola el derecho a la intimidad, dignidad o integridad personal de los empleados).

Con esta misma connotación podemos encontrar la palabra integridad en varias constituciones modernas. Por ejemplo, en la Constitución Española de 1978 se dispone que "[t]odos tienen derecho a la vida y a la integridad física y moral, [...]. Fdo. Garrido Falla, *Comentarios a la Constitución*, Ed. Civitas, S.A., Madrid, España, 1985, pág. 266. La Constitución de Portugal de 1976 dispone en su Artículo 26 sobre "derecho a la integridad personal" que "la integridad moral y física de los ciudadanos es inviolable". *Id*., a la pág. 267. La doctrina española, al

interpretar la referida disposición constitucional, considera que ésta dispone el derecho "a no ser privado de ningún miembro corporal o vital, el derecho a la salud física y mental, el derecho al bienestar corporal o psíquico, el derecho a la propia apariencia personal". *Id*., a la pág. 282.

De igual forma, se ha interpretado que con "integridad física y moral" los Constituyentes de la Constitución española quisieron garantizar la "integridad personal" de los ciudadanos.[13] G. Rodríguez Mourullo, *Derecho a la Vida y a la Integridad Personal, en Comentarios a la Legislación Penal*, Madrid, Ed. Edersa, 1982, pág. 80. A esos efectos, se cita la discusión de los Constituyentes en los siguientes términos:

> En el motivo de la modificación para añadir el término "moral" defendemos que, además del derecho a la vida, el derecho a la integridad obviamente no debe limitarse a lo físico, sino que necesariamente debe extenderse al de carácter moral. Aunque el precepto trata sin duda de tutelar todos aquellos elementos que componen la integridad de la personalidad humana, su redacción puede dar lugar a equívocos. Por tanto, creemos que, o se expresa únicamente en el texto la integridad de la personalidad humana, sin adjetivar dicha integridad de "física" o, por el contrario, se ha de hablar también de la adjetivación de esa integridad como "moral", que es lo que se propone con la presentación de esta enmienda. *Id*., a la pág. 81.

---

[13] La misma Constitución de España dispone que los derechos fundamentales se deberán interpretar de conformidad a la Declaración Universal de los Derechos Humanos de 1948. J. Pérez Royo, *Curso de Derecho Constitucional*, Ed. Marcial Pons, 8va ed., Madrid, España, 2002, pág. 217.

De esta manera se entiende que el concepto consagrado en la Constitución española, similar a la Sección 16 del Artículo II de nuestra Constitución, protege tanto el aspecto físico como los valores humanos abstractos que inciden en el bienestar psíquico de la persona y su condición social.

Visto lo expuesto anteriormente, examinemos los hechos del presente caso.

V

Como señaláramos, el señor García Benavente alega que se ausentó de su empleo porque estaba enfermo y que lo notificó debidamente a su supervisor. Al ser despedido ante esas circunstancias, sostiene que Aljoma Lumber violó la cláusula constitucional que protege a todo trabajador contra riesgos para su salud e integridad personal en su trabajo o empleo. Como el Tribunal de Primera Instancia resolvió esta controversia mediante una sentencia parcial luego de una moción de desestimación, tomaremos como ciertos los hechos alegados en la querella y los interpretaremos de la manera más favorable para el obrero. Montañez v. Hospital Metropolitano, res. el 24 de mayo de 2002, 2002 TSPR 70; Unisys v. Ramallo Brothers, 128 D.P.R. 842, 858 (1991). Por consiguiente, para propósitos de este asunto en particular, aceptaremos como bueno que el señor García Benavente: (1) le notificó a su supervisor que se ausentaría de su trabajo; y (2) que dicha ausencia fue por razón de enfermedad.

Lo primero que debemos atender es la interpretación que hace el Tribunal de Apelaciones en cuanto a que el derecho a la vida garantizado en la Sección 7 de la Carta de Derechos incluye el derecho a obtener un empleo. Con esta conclusión el tribunal intermedio estableció jurisprudencialmente el derecho constitucional a obtener un trabajo que se pretendió incluir en la Constitución mediante la Sección 20 de la Carta de Derechos y que, no obstante, fue expresamente excluido por la Convención Constituyente durante el proceso de aprobación de la Constitución.

En dicha Sección 20 se incluyó un conjunto de los llamados *derechos nuevos* de naturaleza socio-económica, con los que se trató de garantizar a toda persona la educación primaria y secundaria gratuita, *el derecho a obtener trabajo*, a protección social en el desempleo, la enfermedad, la vejez o incapacidad física, el derecho de la mujer embarazada o en época de lactancia y de todo niño a cuidados especiales. Const. E.L.A. de P.R., Art. II, sec. 20, 1 L.P.R.A.

Esta disposición constitucional, contrario a sus contrapartes en los citados tratados internacionales que sirvieron de cimiento a la Carta de Derechos de la Constitución del Estado Libre Asociado de Puerto Rico, sólo enumeraba aspiraciones que dependían para su cumplimiento del desarrollo económico del País. Trías Monge, *supra*, pág. 211-12. Se trata de una disposición que reconocía,

aunque no garantizaba, ciertos derechos humanos y sugería el mayor esfuerzo del Estado para llevarlos al plano práctico. A. Frenos-Insern, *supra*, pág. 49; *Diario de Sesiones de la Convención Constituyente de Puerto Rico*, *supra*, Tomo IV, págs. 2523, 2577. No obstante, el Congreso de Estado Unidos desaprobó su inclusión en la Constitución. *Diario de Sesiones de la Convención Constituyente de Puerto Rico*, *supra*, Tomo IV, págs. 2521, 2529, 2540.

En vista de un historial legislativo tan claro, no podemos avalar la determinación judicial del Tribunal de Apelaciones que instala un derecho expresamente excluido del ámbito de las garantías constitucionales de la Carta de Derechos mediante la interpretación de otro derecho constitucional. La consecuencia del veto del Congreso de la Sección 20 del Artículo II de la Constitución, y de la correspondiente aceptación de la Convención Constituyente, fue excluir el derecho a obtener un trabajo como garantía constitucional.

VI

En síntesis, luego de examinar los antecedentes y cimientos de nuestra Carta de Derechos y evaluar sus disposiciones en conjunto, resolvemos que la Sección 16 de la Carta de Derechos no provee una reclamación de daños y perjuicios cuando el obrero es despedido por ausentarse de su trabajo por razón de una enfermedad no ocupacional. En ese caso, la reclamación del obrero se limita a la mesada provista en la Ley Núm. 80 de 1976, *supra*, de no haber

alguna otra causa de acción al amparo de otras leyes que prohíban el despido y concedan otros remedios. La Sección 16, Artículo II, de la Constitución, lo que garantiza es: (1) protección contra riesgos a la "integridad personal" del obrero, que se refiere a la inviolabilidad de la persona del obrero en la esfera de los valores abstractos, como su vida privada, pensamientos y creencias; y (2) protección de la "salud" del obrero, que trata sobre el bienestar físico o integridad corporal o física en el ámbito laboral. Es decir, en el contexto de la referida Sección 16, "salud" se refiere a la seguridad en el trabajo y a protección contra lesiones corporales o mentales relacionadas al trabajo; mientras que "integridad personal" sanciona el menoscabo a la dignidad del obrero en el ámbito laboral, ya sea como consecuencia de ataques a su vida privada o a su reputación. El señor García Benavente, no obstante, no reclama que se le haya menoscabado su bienestar emocional por ataques a su reputación o vida privada. Tampoco se queja de las condiciones de seguridad o salubridad en su lugar de trabajo.

Por lo tanto, se revoca la sentencia del Tribunal de Apelaciones y se confirma la sentencia parcial del Tribunal de Primera Instancia en la que desestima la reclamación de daños y perjuicios y la solicitud de reposición al empleo del señor García Benavente fundamentada en el Artículo II, Sección 16, de la Constitución del Estado Libre Asociado de Puerto Rico. Se devuelve el caso al Tribunal de Primera

Instancia para que continúen los procedimientos en el mismo de forma consistente con lo aquí dispuesto y se determine si el señor García Benavente puede ser acreedor de la reclamación al amparo de la Ley Núm. 80 de 1976, *supra*, o de alguna otra ley.


                        Federico Hernández Denton
                             Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Juan Roberto García
Benavente

   Querellante

   v.                                    CC-2003-185      Certiorari

Aljoma Lumber, Inc.

   Querellado


SENTENCIA

San Juan, Puerto Rico, a 21 de julio de 2004.


    Por lo expuesto en la Opinión que antecede, la cual se hace formar parte integral de la presente, se revoca la sentencia del Tribunal de Apelaciones y se confirma la sentencia parcial del Tribunal de Primera Instancia en la que desestima la reclamación de daños y perjuicios y la solicitud de reposición al empleo del señor García Benavente fundamentada en el Artículo II, Sección 16, de la Constitución del Estado Libre Asociado de Puerto Rico. Se devuelve el caso al Tribunal de Primera Instancia para que continúen los procedimientos en el mismo, de forma consistente con lo aquí dispuesto y se determine si el señor García Benavente puede ser acreedor de la reclamación al amparo de la Ley Núm. 80 de 1976, *supra*, o de alguna otra ley.

    Así lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rivera Pérez concurre sin opinión escrita.


Patricia Otón Olivieri
Secretaria del Tribunal Supremo