Versión para imprimir



EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Félix A. Rivera Figueroa<br><br>Peticionario<br><br>v.<br><br>The Fuller Brush Co. o         f P.R.,<br>Inc.; Compañía de Seguros A, B y C;<br>Querellados desconocidos X y Y<br><br>Recurridos | Certiorari<br><br>2011 TSPR 25<br><br>180 DPR _____ |

Número del Caso: CC         - 2006 - 1010

Fecha: 23 de febrero de 2011

Tribunal de Apelaciones:

      Región Judicial de Utuado Panel V

Juez Ponente:

      Hon. Luis R. Piñero González

Abogado de la Parte Peticionaria:

      Lcdo. Héctor L. Banchs Pascualli

Abogado de la Parte Recurrida:

      Lcdo. Juan M. Frontera Suau

Materia:     Despido Injustificado

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publica         ción oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Félix A. Rivera Figueroa
          Peticionario


              v.                                    *Certiorari*

The Fuller Brush Co. of P.R.,          CC-2006-1010
Inc.; Compañía de Seguros A, B y
C; Querellados desconocidos X y
Y
          Recurridos


Opinión del Tribunal emitida por la Jueza Asociada señora Fiol Matta.


En San Juan, Puerto Rico, a 23 de febrero de 2011.

Nos corresponde determinar el momento en que se activa la presunción de despido injustificado establecida en la Ley número 80 de 30 de mayo de 1976, según enmendada, mejor conocida como la Ley de Despido Injustificado, cuando un empleado querellante alega que fue objeto de un despido constructivo. En particular, si una mera alegación de despido constructivo es suficiente para activar dicha presunción e invertir la carga probatoria imponiéndole al patrono querellado el peso de demostrar justa causa para la acción tomada.

I.

El 1 de noviembre de 2004, el peticionario Félix A. Rivera Figueroa presentó una querella al amparo de la Ley número 80,[1] (en adelante "Ley 80") contra su antiguo patrono ("Fuller Brush"). Además, solicitó que el caso se tramitara bajo el procedimiento sumario laboral provisto por la Ley número 2 de 17 de octubre de 1961.[2] En su querella, el señor Rivera Figueroa alegó, entre otras cosas,[3] que fue despedido sin justa causa como vendedor de Fuller Brush al verse forzado a renunciar a dicho puesto en mayo de 2004. De esa forma, alegó que fue víctima de un despido constructivo. Para sustentar su reclamación, el señor Rivera Figueroa alegó que sufrió cambios drásticos y repentinos en el método de remuneración, que fue presionado a renunciar como empleado para convertirse en contratista independiente y que el trato que le ofrecieron tras rechazar la oferta de convertirse en contratista independiente fue de corte hostil. En su contestación a la querella, el patrono negó el despido y alegó que la renuncia del señor Rivera Figueroa fue enteramente voluntaria. En particular, alegó que los cambios en las condiciones de trabajo del señor Rivera Figueroa no fueron con la intención de forzarle a renunciar y que fueron

---

[1] 29 L.P.R.A. §§ 185a *et seq*.

[2] 32 L.P.R.A. §§ 3118 *et seq*.

[3] Las demás alegaciones no están ante nuestra consideración.

iguales para todos los vendedores como parte de un proceso generalizado de cambios al interior de la compañía.

Amparándose en la presunción creada por la Ley 80 de que todo despido es injustificado, el señor Rivera Figueroa solicitó al Tribunal de Primera Instancia que requiriera al patrono querellado iniciar la presentación de la prueba. El empleado alegó que según la Ley 80, una vez presentada la causa de acción a su amparo, se activa una presunción de despido injustificado por lo cual le correspondía al patrono querellado ofrecer prueba para demostrar, mediante preponderancia de la evidencia, que el despido fue justificado. Por su parte, el patrono querellado argumentó que para activar la presunción de despido injustificado el querellante tenía que establecer primero que su renuncia, en efecto, equivalía a un despido constructivo.

El foro de instancia le dio la razón al patrono y ordenó al querellante presentar su prueba. Éste se limitó a presentar su propio testimonio durante el cual relató las presiones que recibió para firmar un contrato que lo convertiría en contratista independiente, el trato que recibió desde que rechazó esa oferta, sobre el cual expresó que ya "no era el mismo", era "hostil" y le trataban "de codo". Testificó también sobre la eliminación beneficios, como una cena pagada por el patrono para los vendedores, y que ya ni un "buenos días" le ofrecían en el trabajo.[4] Tras esta prueba del querellante, el patrono solicitó la

---

[4] Transcripción del juicio en su fondo, a las páginas 23-27.

desestimación de la causa al amparo de la Regla 39.2(c) de Procedimiento Civil. El Tribunal de Primera Instancia declaró con lugar dicha moción y desestimó la causa de acción. En esencia, el foro primario razonó que la prueba no demostró que la renuncia del señor Rivera Figueroa constituyera un despido constructivo, por lo cual no le cobijaba la presunción establecida por la Ley 80.

Inconforme con esta determinación, el señor Rivera Figueroa acudió, oportunamente, al Tribunal de Apelaciones, alegando que el Tribunal de Primera Instancia había errado al ordenarle a desfilar su prueba antes que la del patrono. Sostuvo que la presunción que crea la Ley 80 se activa con la presentación misma de la querella y que por ello era el patrono quien tenía que iniciar el desfile de prueba para derrotar la presunción de que se trató de un despido sin justa causa. El foro apelativo confirmó la decisión del Tribunal de Primera Instancia, razonando que "[s]i bien es cierto que el patrono viene obligado a alegar en su contestación a la demanda los hechos que dieron lugar al despido, el empleado que alega un despido constructivo debe primero formular de forma clara y precisa los actos que alegadamente motivaron su renuncia y además, demostrar la magnitud de los alegados vejámenes y que la única alternativa razonable era renunciar".[5] El Tribunal de Apelaciones concluyó que "[s]olo entonces al patrono le corresponde presentar sus alegaciones en oposición" y que

---

[5] Sentencia del Tribunal de Apelaciones, pp. 7-8.

la "renuncia *per se* no activa una presunción de despido injustificado".[6] Sostuvo, además, que la desestimación al amparo de la Regla 39.2(c) estaba basada en la prueba y, por tanto, no erró el Tribunal de Primera Instancia al desestimar la causa.

Inconforme aún, el señor Rivera Figueroa recurrió ante este Tribunal mediante una oportuna petición de *certiorari*. Como único error, planteó que ambos tribunales inferiores incidieron al sostener que le correspondía al querellante el desfile inicial de la prueba, toda vez que en una reclamación presentada al amparo de la Ley 80, el patrono querellado viene obligado a presentar la prueba inicial que establezca que el despido fue justificado. Expedimos el auto de *certiorari* y, con el beneficio de la comparecencia de las partes, estamos en posición de resolver.

## II.

Hemos reiterado la importancia del derecho al trabajo en nuestra sociedad en muchas ocasiones, más recientemente en Domínguez Castro v. E.L.A.[7] En efecto, la política pública establecida en nuestra legislación laboral reconoce que el trabajo es un elemento central de nuestra vida en sociedad. Es así, tanto por lo que significa a nivel individual en la vida diaria de decenas de miles de

---

[6] *Íd.*, p. 8.

[7] 177 D.P.R. ___ (2010), 2010 T.S.P.R. 11, p. 82. *Véase además* Amy v. Adm. Deporte Hípico, 116 D.P.R. 414, 421 (1983).

puertorriqueños y puertorriqueñas, como por el beneficio colectivo que se genera cuando a través del esfuerzo ofrecemos calidad de vida a nuestro pueblo y desarrollo social y económico para nuestro país.[8] Además, como señaló el Juez Asociado Fuster Berlingeri en su opinión concurrente en Arthur Young & Co. v. Vega III,[9] en la medida en que "la persona aporta al bien común y se autorealiza", el trabajo adquiere un hondo significado ético.

De las 20 secciones que componen el Artículo II de nuestra Constitución, cinco de ellas se refieren directamente a derechos relacionados al trabajo.[10] Se trata de un reconocimiento por la generación constituyente de la inherente desigualdad que caracteriza la relación obrero-patronal, en donde el patrono, por su capacidad económica, posee mayor poder que el trabajador individual que necesita

---

[8] Charles Zeno Santiago & Víctor M. Bermúdez Pérez, Tratado de Derecho del Trabajo, T. I, J.T.S. (2003), p. 1.

[9] 136 D.P.R. 157, 189 (1994).

[10] Sección 12 y la prohibición de la servidumbre involuntaria; sección 15 y la prohibición de emplear a menores de 14 años. La sección 16 recoge múltiples derechos laborales: el derecho de todo trabajador o trabajadora de escoger libremente su ocupación y renunciar a ella, igual paga por igual trabajo, salario mínimo razonable, protección contra riesgos para la salud e integridad personal y jornada que no exceda las ocho horas diarias. Por su parte, las secciones 17 y 18 reconocen el derecho a organizarse y negociar colectivamente, y a realizar huelgas y actividades concertadas. Por su parte, la frustrada sección 20 reconocía el derecho de toda persona a obtener trabajo. Sobre este derecho en particular, hemos expresado que el mismo "late entre aquellos derechos que, aunque no se mencionan expresamente en el texto, el pueblo se reserva frente al poder político creado". Amy v. Adm. Deporte Hípico, supra, p. 421.

de su empleo para sobrevivir. Por eso, los aspectos de la relación obrero-patronal que gozan de rango constitucional están diseñados para la protección de los derechos de los trabajadores.

En el caso particular de la terminación de la relación obrero-patronal, que es lo que debemos atender en este caso, es significativa la decisión de la Convención Constituyente de elevar a rango constitucional el derecho del trabajador o trabajadora a renunciar libremente a su empleo, pero no así el derecho de un patrono a despedir a un trabajador.[11] Según reconocimos en García v. Aljoma,[12] "[a]l proponer los derechos de los trabajadores, la Comisión de Cartas [sic] de Derechos de la Asamblea Constituyente señaló la alta dignidad del esfuerzo humano y recalcó que el énfasis de los derechos propuestos recaía en aquel grueso de la clase trabajadora que por razón de especial desvalimiento históricamente ha necesitado, aunque no siempre ha recibido, protección social".[13]

A partir de este reconocimiento de la generación constituyente a los derechos de los trabajadores como uno de los ejes centrales de nuestra vida constitucional, la legislación se ha ocupado de establecer un balance en la

---

[11] Sección 16, Artículo II, Constitución de Puerto Rico.

[12] 162 D.P.R., 572, 587-588 (2004).

[13] Citando a 4 Diario de Sesiones de la Convención Constituyente de Puerto Rico, 2573 (1951). Véase Luis H. Sánchez Caso, Reflexiones sobre la Responsabilidad Civil de los oficiales y gerenciales en reclamaciones de despido o discrimen, 34 Rev. Jur. U.I.P.R. 183, 190, 193 (2000).

relación entre el trabajador y el patrono.[14] De igual manera, nuestra jurisprudencia ha reconocido este legado constitucional y su desarrollo estatutario posterior.[15] Recientemente, en Orsini v. Srio. de Hacienda,[16] reconocimos que en la dinámica obrero-patrono el trabajador es aún la parte más débil y que por ello, "el Estado se ha encargado de aprobar una variedad de leyes protectoras del trabajo cuya finalidad es proteger el empleo, regular el contrato de trabajo y asegurar la salud y seguridad del obrero". No hay duda, pues, que nuestro ordenamiento laboral está orientado a la protección de los trabajadores y evitar las prácticas injustas del trabajo.[17]

III.

A.

El derecho al empleo, que es, evidentemente, el principal derecho laboral, cobra mayor importancia si tomamos en cuenta que muchas de las protecciones estatutarias no tendrían sentido si no se protege el derecho mismo a preservar un empleo ante una actuación caprichosa e irrazonable por parte de un patrono. Así lo

---

[14] Zeno Santiago & Bermúdez Pérez, *Op. Cit*, p. 51.

[15] García v. Aljoma, *supra*, p. 583.

[16] 177 D.P.R. ___ (2009), 2009 T.S.P.R. 190, pp. 15-16.

[17] Rivera v. Pan Pepín, 161 D.P.R. 681, 688 (2004); Díaz v. Wyndham Hotel Corp., 155 D.P.R. 364, 374 (2001). *Véase además* Charles Zeno Santiago, El despido y la política social en nuestro Estado de Derecho, 34 Rev. Jur. U.I.P.R. 213 (2000).

reconocimos en <u>Orsini v. Srio. de Hacienda</u>, *supra*, pp. 21-22, al expresar que "[e]sta política pública, dirigida a desalentar los despidos injustificados, se sustenta en que sin la protección del empleo no son necesarios otros derechos laborales, que por definición requieren una relación de trabajo y claro, en que el trabajo tiene una función social trascendental tanto en el ámbito individual como en el colectivo".

La doctrina del *employment at will*, que daba al patrono libertad para contratar y despedir a un empleado con o sin justa causa, sin mediar indemnización, es ajena a nuestro esquema constitucional y estatutario. Por eso, aunque el tema de la indemnización por despido injustificado todavía "es objeto de efervescencia judicial en los Estados Unidos, donde múltiples tribunales han rechazado la tradicional doctrina de *employment at will*",[18] en Puerto Rico tenemos una larga tradición que es contraria a esa doctrina.[19]

Sin embargo, nuestro ordenamiento estatutario no prohíbe absolutamente el despido de un empleado. Más bien, castiga el despido sin justa causa. La Ley 80, según enmendada, mejor conocida como la Ley de Despido Injustificado, regula las circunstancias en que un patrono privado puede despedir a un empleado. Esta Ley, a su vez,

---

[18] J. Salicrup, <u>Ariel Arroyo v. Rattan Specialties: ¿Aplican en Puerto Rico las excepciones a la doctrina de "employment at will"?</u>, 21 Rev. Jur. U.I.P.R. 367 (1987).

[19] <u>Arroyo v. Rattan Specialties</u>, 117 D.P.R. 35, 65 (1986).

es producto de un desarrollo estatutario previo que, más que constituir una excepción a la llamada doctrina del *employment at will*, se encamina por una senda totalmente distinta.[20]

En su artículo 1, la Ley 80 establece que toda persona que sea empleado de comercio, industria o cualquier otro negocio o sitio de empleo, que sea contratada sin tiempo determinado y trabaje mediante remuneración de alguna clase, que fuere despedido de su cargo sin que haya mediado una causa justa, tendrá derecho a recibir de su patrono una indemnización, además del sueldo que hubiere devengado. Esta compensación se conoce como la mesada y su cuantía dependerá del tiempo que el empleado ocupó su puesto y del sueldo que devengaba.[21]

La Ley articula los supuestos que constituyen justa causa para el despido en su artículo 2.[22] Por eso, como regla general, todo despido es injustificado al menos que responda a las excepciones provistas en la propia Ley 80. Será justa causa para el despido: (1) que el obrero siga un patrón de conducta impropia o desordenada; (2) que el empleado no rinda su trabajo en forma eficiente o lo haga tardía y negligentemente o en violación de las normas de calidad del producto que se produce o maneja por el

---

[20] *Véase,* por ejemplo, la Ley número 50 de 20 de abril de 1949, 29 L.P.R.A. §§ 183-185 (derogadas).

[21] 29 L.P.R.A. § 185a.

[22] 29 L.P.R.A. § 185b.

establecimiento; (3) que el empleado viole reiteradamente las reglas y reglamentos razonables establecidos para el funcionamiento del establecimiento, siempre que se le haya suministrado oportunamente copia escrita de los mismos; (4) que surja el cierre total, temporero o parcial de las operaciones del establecimiento; (5) que sucedan cambios tecnológicos o de reorganización, cambios de estilo, diseño o naturaleza del producto que se produce o maneja por el establecimiento y cambios en los servicios rendidos al público; o (6) que se requieran reducciones en empleo debido a una reducción en el volumen de producción, ventas o ganancias, anticipadas o que prevalecen al ocurrir el despido. Un despido que tenga lugar en otras circunstancias será injustificado y se compensará con el pago de la mesada. Es decir, la Ley 80 aplica a aquellos empleados de comercio, industria o cualquier otro negocio o sitio de empleo que: (1) estén contratados sin tiempo determinado; (2) reciban una remuneración; y (3) *sean despedidos* de su cargo, sin que haya mediado justa causa.[23]

La Ley 80 es, indudablemente, una legislación reparadora y, como tal, venimos obligados a interpretarla liberalmente a favor de los derechos del trabajador, resolviendo toda duda a favor del obrero, para cumplir con sus propósitos eminentemente sociales y reparadores.[24] Ahora

---

[23] <u>Orsini v. Srio. Hacienda</u>, *supra*, p. 19; Zeno Santiago & Bermúdez Péres, *Op. Cit*, p. 98. (Énfasis suplido).

[24] <u>Irizarry v. J & J Cons. Prods. Co., Inc.</u>, 150 D.P.R. 155, 164 (2000); <u>Belk v. Martínez</u>, 146 D.P.R. 215, 232 (1998).

bien, también tiene una función coercitiva y un objetivo desalentador contra el capricho patronal.[25] En Jusino v. Walgreens,[26] explicamos que "[l]a Ley 80 tiene un valioso propósito social y *coercitivo*, a saber, *sancionar* que un patrono despida a su empleado o empleada salvo que demuestre una causa justificada para ello. En otras palabras, tiene el propósito de brindarle mayor protección a los trabajadores de Puerto Rico".[27] Nuestra jurisprudencia interpretativa ha sido consistente en ofrecer la mayor protección al trabajador cuando éste es objeto del capricho o abuso patronal. Por eso recalcamos recientemente las protecciones de la Ley número 80 son irrenunciables.[28]

C.

La Ley 80 crea una presunción de que todo despido es injustificado y que le corresponde al patrono, mediante preponderancia de la prueba, demostrar lo contrario, es

---

La Exposición de Motivos de la Ley 80 hace hincapié en la intención de sustituir una protección laboral que califica como "*inadecuada e ineficaz*, especialmente por lo limitado del remedio que ofrece un empleado que fuese víctima de un despido injustificado". Leyes de Puerto Rico, 1976, p. 268. (Énfasis suplido).

[25] Vélez Cortés v. Baxter, 179 D.P.R. ___ (2010), 2010 T.S.P.R. 110, p. 12.

[26] 155 D.P.R. 560, 571 (2001).

[27] (Énfasis suplido).

[28] Vélez Cortés v. Baxter, *supra*, p. 13.

decir, que hubo justa causa.[29] De esa forma, el peso de la prueba para establecer que el despido fue justificado, una vez activada la presunción, recae en el patrono y el criterio, como en cualquier proceso civil, es el de preponderancia de la prueba.[30]

Pero, para disfrutar de la presunción generada por la Ley 80 hace falta, como elemento de umbral, que haya habido un despido. El empleado tiene que demostrar que cumple los requisitos de la causa de acción: que fue empleado de un comercio, industria u otro negocio; que su contrato era por tiempo indeterminado; que recibía remuneración por su trabajo y *que fue despedido de su puesto.*

Para propósitos de la Ley 80, esta condición de ser despedido no está limitada por la definición usual del término 'despido'.[31] Más bien, la definición de la Ley 80 es bastante amplia, pues abarca, no sólo la acción unilateral del patrono dirigida a cesantear al empleado, sino las acciones dirigidas *a inducirlo o forzarlo a renunciar,* tales como imponerle o intentar imponerle condiciones de trabajo más onerosas, reducirle el salario, rebajarlo en categoría o someterlo a vejámenes o humillaciones de hecho

---

[29] 29 L.P.R.A. § 185a; Rivera v. Pan Pepín, *supra*, p. 670; Belk v. Martínez, *supra*, pp. 230-231; Báez García v. Cooper Labs., Inc., 120 D.P.R. 145, 152 (1987).

[30] Orsini v. Srio de Hacienda, *supra*, n. 95; Díaz v. Wyndham Hotel Corp., *supra*, p. 378.

[31] Hemos dicho que el despido es la ruptura unilateral, que hace el patrono, del contrato individual de trabajo celebrado con uno o varios trabajadores. Díaz v. Wyndham Hotel Corp., *supra*, p. 374; Zeno Santiago, *Op. Cit.*, p. 214.

o de palabra.[32] A esta última modalidad de despido se le conoce como despido constructivo o tácito.[33]

En el despido constructivo, al empleado se le obliga a renunciar mediante la imposición de condiciones onerosas.[34] Cabe señalar que este Tribunal reconoció esta modalidad de despido aún antes de la vigencia de la Ley 80 cuando resolvimos que aquellos "actos voluntarios e injustificados de un patrono encaminados a obligar al empleado a dejar su cargo, constituyen un despido cuando la única alternativa razonable que queda al empleado es la de abandonar el cargo".[35] Claro está, no basta con cualquier molestia o condición antipática en el empleo, y cuando se trate de vejámenes y humillaciones, estos deben ser de magnitud sustancial.[36] Tampoco se determina la magnitud y efecto de los actos patronales con referencia a la visión subjetiva del empleado individual; más bien, se utiliza un criterio objetivo, al examinar si una persona razonable se sentiría

---

[32] 29 L.P.R.A. § 185e. Estos ejemplos ofrecidos por la propia Ley de lo que constituye despido constructivo no son taxativos.

[33] Esta modalidad de despido estaba contemplada en la Ley número 50 de 20 de abril de 1949. *Véase* Zeno Santiago, *Op. Cit.*, p. 217; Zeno Santiago & Bermúdez Pérez, *Op. Cit.*, p. 99.

[34] Zeno Santiago, *Op. Cit.*, p. 215.

[35] Vélez de Reilova v. R. Palmer Bros., Inc., 94 D.P.R. 175, 178 (1967).

[36] Acevedo Colom, *Op. Cit.*, p. 165; Arthur Young & Co. v. Vega III, *supra*, p. 184.

forzada a renunciar como resultado de las acciones del patrono.[37]

Como hemos visto, la definición de despido constructivo de la Ley 80, según la cual será considerada como despido constructivo la renuncia del empleo motivada por actuaciones del patrono dirigidas a *inducir o forzar* al empleado a renunciar, recoge el desarrollo jurisprudencial de este concepto hasta la fecha en que fue aprobada la Ley. Después de su aprobación, nuestra jurisprudencia ha preservado los elementos esenciales de despido constructivo que delineamos en Vélez de Reilova v. R. Palmer Bros., Inc.[38] En Arthur Young & Co. v. Vega III, establecimos que "para que los actos voluntarios e injustificados del patrono constituyan un despido implícito para fines de la Ley Núm. 80, *supra*, es preciso que el empleado *pruebe* que la única alternativa razonable que le quedaba era el abandono de su cargo".[39] Es decir, no basta con una mera alegación de que la renuncia fue un despido constructivo. Como parte de la causa de acción al amparo de la Ley 80, hace falta demostrar el hecho base del despido, sea directo o en su modalidad constructiva o tácita.

---

[37] Zeno Santiago, *Op. Cit.*, p. 217.

[38] *Véase* Malavé v. Oriental, 167 D.P.R. 592 (2006); Nazario v. E.L.A., 159 D.P.R. 799 (2003 Sentencia). En Hernández v. TOLIC, 151 D.P.R. 754, 777 (2000), caso de despido constructivo en una reclamación al amparo de la Ley número 100 de 30 de junio de 1959, 29 L.P.R.A. §§ 146 *et seq*, se usó el concepto de despido constructivo contemplado en la Ley 80.

[39] Arthur Young & Co. v. Vega III, *supra*, p. 183. (Énfasis suplido).

El Departamento del Trabajo y Recursos Humanos aprobó una guía interna sobre la Ley 80 que detalla los elementos del despido constructivo y las presunciones creadas por dicha Ley.[40] En cuanto al despido constructivo, la Guía expresa que las "acciones del patrono deben exhibir un nivel de seriedad considerable. Simples mal entendidos [*sic*] o situaciones antipáticas que no tienen el efecto de crearle al empelado un ambiente de trabajo que resulte intimidante, hostil y ofensivo no conllevan […] un despido constructivo".[41] Por el contrario, debe tratarse de actuaciones patronales "arbitrarias, irrazonables y caprichosas que generen una atmósfera hostil para el obrero que impidan del todo su sana estadía en el trabajo y que sean originadas por un motivo ajeno al legítimo interés de salvaguardar el bienestar de la empresa. Gestiones administrativas legítimas, realizadas con el único propósito de salvaguardar el bienestar de la empresa, no dan lugar a un despido constructivo si la intención del patrono al realizar las mismas no era la de lesionar la condición de empleado del trabajador".[42] Por su parte, la doctrina en los Estados Unidos en cuanto al concepto de despido constructivo es muy similar a la puertorriqueña.[43]

---

[40] <u>Guía revisada para la interpretación y aplicación de la Ley Núm. 80</u>, Departamento del Trabajo y Recursos Humanos (1996).

[41] *Íd.*, p. 22.

[42] *Íd.*, p. 23.

[43] *Véase* Zeno Santiago, *Op. Cit.*, p. 248.

IV.

Como hemos visto, una de las herramientas más importantes que crea la Ley 80 es la presunción de que todo despido es injustificado. En efecto, el peticionario basa su solicitud en esta presunción. Para comprender el alcance de la presunción de despido injustificado y determinar su aplicación en este caso, veamos primeramente la figura de la presunción, su relación con las cargas probativas en los casos civiles y su manifestación en controversias sobre el derecho de empleo.

A.

Una presunción es una deducción de un hecho que la ley autoriza a hacer o requiere que se haga a partir de *otro hecho o grupo de hechos previamente establecidos*. A ese hecho o grupo de hechos previamente establecidos se les denomina hecho básico y al hecho deducido mediante la presunción, se le denomina hecho presumido.[44] El debido proceso de ley exige que haya un vínculo racional entre el hecho básico y el hecho presumido, que, como indica el profesor Chiesa Aponte, puede surgir de la lógica, de la experiencia o de cierta política pública.[45] En otras palabras, las presunciones no se activan solas: "Las reglas

---

[44] Regla 301(a) de las Reglas de Evidencia de 2009, <u>32 L.P.R.A. Ap. VI R. 301(a)</u>. Esta Regla es análoga a la Regla 13(a) de 1983.

[45] Ernesto Chiesa Aponte, <u>Reglas de Evidencia de Puerto Rico 2009</u>, J.T.S. (2009), p. 109. *Véase además* <u>Díaz v. Wyndham</u>, *supra*, p. 385.

de inferencia se activan si el juzgador [o juzgadora] estima que *la evidencia ha establecido el hecho básico*, al menos como lo más probable".[46]

En una acción civil, el efecto de una presunción es imponerle a la parte que niega el hecho presumido el peso de probar su inexistencia. Si la parte contra la cual se establece la presunción no ofrece prueba para demostrar la inexistencia del hecho presumido, la juzgadora o el juzgador debe aceptar que el hecho existe. Sin embargo, si se presenta prueba en apoyo de la inexistencia de tal hecho, ésta debe ser suficiente para persuadir a quien juzga que es más probable la inexistencia del hecho presumido que su inexistencia.[47] Es decir, una vez activada la presunción ordenada por ley, la parte contra quien se emplea tiene el deber de presentar prueba para rebatir la presunción y dicha evidencia debe, además, persuadir al juzgador. De lo contrario, el hecho presumido sobrevive. A ello nos referimos cuando caracterizamos las presunciones en el área civil como fuertes. Como nos dice el profesor Chiesa Aponte, "[n]o se trata sólo de la carga de presentar evidencia, sino también de que la evidencia sea de tal calidad que persuada al juzgador [o juzgadora] de que lo más probable es la falsedad del hecho presumido".[48]

---

[46] Chiesa Aponte, Reglas, *Op.Cit.*, p. 110. (Énfasis suplido).

[47] Regla 302 de Evidencia de 2009. 32 L.P.R.A. Ap. VI R 302.

[48] Chiesa Aponte, Reglas, *Op. Cit.*, p. 110.

Nuestra jurisprudencia ha recogido estos principios fundamentales. Hemos resuelto que la mera alegación de un hecho básico, sin haberlo establecido debidamente, no activa una presunción que permita la inferencia de un hecho presumido.[49] Un demandante tiene la obligación de aportar prueba que establezca los hechos básicos que den lugar a la presunción.[50] De otra manera, no sería posible ni razonable exigirle al demandado que derrote una presunción sostenida solamente por una alegación.[51] De esa forma, la validez de la presunción dependerá inexorablemente de la existencia de unos hechos básicos debidamente probados y su relación racional con el hecho presumido.[52]

Para que un obrero demandante en un pleito al amparo de la Ley 80 pueda valerse de la presunción fuerte de que su despido fue injustificado, tiene que presentar prueba demostrativa de que, en efecto, fue despedido. En caso de que alegue un despido constructivo, el trabajador tiene que demostrar que las circunstancias de su renuncia cumplen con los requisitos que establece nuestro ordenamiento para esa conclusión. La presunción de despido injustificado que establece la Ley 80 no se activa hasta tanto logre persuadir al juzgador o juzgadora de ese hecho básico,

---

[49] McCrillis v. Aut. Navieras de P.R., 123 D.P.R. 113, 141 (1989).

[50] Díaz v. Wyndham Hotel Corp., *supra*, p. 386.

[51] *Íd.*

[52] Alberty v. Bco. Gub. De Fomento, 149 D.P.R. 655, 667 (1999, Op. Concurrente Negrón García).

entiéndase, de que su renuncia fue en realidad un despido tácito.[53]

Debemos puntualizar que lo anterior no despoja a un trabajador demandante de la presunción de despido injustificado que establece la Ley 80. Además, cuando la presunción se suscita en un pleito que trata sobre los derechos de los trabajadores hay que tomar en cuenta la política pública incorporada en la ley. Por eso, presunciones como las de despido injustificado "están investidas de tan alto interés público [que] sólo pueden derrotarse por prueba que sea amplia y vigorosa".[54] De esa forma, el patrono demandado siempre tendrá el peso de la prueba en cuanto la justificación del despido. Si se logra activar la presunción y la evidencia que presenta el patrono no la derrota, la presunción sobrevive y prevalece el obrero. Pero, para establecer el hecho base que da vida a la presunción, el trabajador tiene que probarlo al amparo de la citada Regla 110. Solamente tiene el peso de la prueba *en cuanto al establecimiento del hecho básico*. En lo demás, entiéndase la disposición final del pleito una vez se activa la presunción, la carga probatoria es del patrono. Como nos dice el profesor Chiesa Aponte, "[p]or efecto de presunciones, la parte que tiene el peso de la prueba podría no tener la obligación de presentar

---

[53] Para demostrar este hecho base, bastará con cumplir con las exigencias de la Regla 110 de Evidencia de 2009. 32 L.P.R.A. Ap. VI R. 110.

[54] Sandoval v. Caribe Hilton, 149 D.P.R. 582 (1999, Opinión de Conformidad Fuster Berlingeri).

evidencia".[55] En el ámbito de una causa de acción al amparo de la Ley 80, esto significa que, en cuanto a la controversia sobre la justificación del despido, el empleado cobijado por la presunción podría prevalecer en el pleito sin más evidencia que la misma presunción. No obstante, para activar dicha presunción, alguna prueba tiene que presentar inicialmente para demostrar la existencia del hecho base que la justifica.[56]

## B.

Como regla general, el peso de la prueba en toda acción civil recae sobre la parte demandante. El estándar aplicable de suficiencia de prueba será el de preponderancia.[57] Ahora bien, como nos dice el profesor Emmanuelli Jiménez, "[c]uando se menciona el peso de la prueba en una acción judicial, se está refiriendo a la obligación de convencer al juzgador [o juzgadora] sobre la forma particular en que ocurrieron los hechos que se

---

[55] Chiesa Aponte, Reglas, *Op. Cit.*, p. 98.

[56] La casuística federal estadounidense está en sintonía con este esquema. En Johnson v. Shalala, 991 F. 2d 126 (4th Cir. 1993), el Tribunal de Apelaciones federal se enfrentó a un caso donde se alegaba despido constructivo. Al desestimar la acción, sostuvo que no se presentó evidencia suficiente para establecer que la renuncia fue, en efecto, un despido constructivo. En Rivera v. DHL Global Forwarding, 536 F. Supp. 2d 148 (2008), el Tribunal de Distrito federal sostuvo que el demandante no logró probar ni demostrar que las condiciones de empleo eran de tal magnitud que equipararan su renuncia a un despido tácito.

[57] Regla 110(f) de Evidencia.

alegan".[58] Por eso, los temas de carga de prueba y presunciones son inseparables.[59]

Como vimos, una vez probados los hechos que dan base a la activación de la presunción, cambia el peso de la prueba, de manera que la otra parte tiene la obligación de persuadir al juzgador o a la juzgadora sobre lo contrario.[60] Esto, nos dice Emmanuelli Jiménez, "puede llevar al caso de que un demandante, quien generalmente tiene el peso de la prueba en una acción civil, sólo tenga que probar los hechos básicos de una presunción y después descanse en ella para establecer la totalidad de la reclamación."[61] A igual conclusión llega el profesor Chiesa Aponte cuando manifiesta que "[l]as presunciones afectan las cargas probatorias. Aunque inicialmente las cargas probatorias están en una misma parte, esto puede cambiar por efecto de presunciones".[62] Es decir, si un demandante logra activar una presunción que le favorezca puede prevalecer contra un

---

[58] Rolando Emmanuelli Jiménez, Prontuario de Derecho Probatorio Puertorriqueño, 2010, p. 121. El autor también sostiene que es importante tener en mente que las presunciones tiene un efecto muy importante en el peso de la prueba. Íd.

[59] Chiesa Aponte, Tratado, Op. Cit., p. 1088; Díaz v. Wyndham, supra, p. 385.

[60] Emmanuelli Jiménez, Prontuario de Derecho Probatorio Puertorriqueño, Op.Cit., pp. 121.-122.

[61] Íd.

[62] Chiesa Aponte, Tratado, Op. Cit., p. 1095; Díaz v. Wyndham Hotel Corp., supra, p. 385. En su Tratado de Derecho Probatorio, el profesor Chiesa Aponte menciona como ejemplo de esto la presunción establecida por la Ley 80. Íd., p. 1114.

demandado que presente prueba para refutarla. Ello, aunque el demandante no presente más prueba que la que fue necesaria para activar la presunción. Si la prueba ofrecida por el demandado no derrota la presunción mediante preponderancia de la evidencia, la presunción se sostiene y el demandante triunfará en su causa de acción. A ello nos referimos cuando afirmamos que "[e]n nuestra jurisdicción las presunciones tienen el efecto de transferir al demandado el peso de *producir* evidencia y, *además*, el de *persuadir* al juzgador".[63]

C.

La Ley 80 no es el único esquema estatutario laboral que genera una presunción contra el patrono e invierte el peso de la prueba en su contra. Lo mismo sucede con la Ley 100, que prohíbe el discrimen en el empleo, y crea una presunción de despido discriminatorio si el empleado querellante logra establecer un caso *prima facie* con los elementos requeridos por la ley, entre éstos el despido o acto perjudicial y la ausencia de justa causa, elementos que hemos equiparado a los términos homólogos de la Ley 80.[64] También hemos resuelto que, al igual que bajo la Ley 80, una vez establecido el caso *prima facie*, se invierte el peso de la prueba y le corresponde al patrono demandado demostrar que no están presentes los elementos requeridos

---

[63] Belk v. Martínez, *supra*, p. 231. (Énfasis suplido).

[64] Hernández v. TOLIC, *supra*.

por ley, mediante preponderancia de la evidencia. Esta normativa evidenciaría, como explicamos en Ibáñez v. Molinos de P.R., Inc.,[65] "tiene como fundamento que el patrono demandado, por su posición más ventajosa, generalmente tiene mayor acceso a la evidencia del despido y puede probar la ausencia del discrimen con relativa facilidad".[66] A una conclusión similar llegamos en Belk v. Martínez, *supra*, p. 231. Allí dijimos que "una vez que el empleado establece las circunstancias esenciales para que el juzgador pueda asumir el hecho presumido -que el despido o acción perjudicial se realizó sin justa causa- se invierte la carga probatoria". Como puede observarse, parte del caso *prima facie* es, precisamente, *demostrar el despido* o acto perjudicial y no meramente alegarlo.[67]

---

[65] 114 D.P.R. 42 (1983).

[66] *Íd.*, pp. 49-50.

[67] Hernández v. TOLIC, *supra*, pp. 774-775. En cuanto al elemento base del despido, la Guía del Departamento del Trabajo y Recursos Humanos expone: "De negar el patrono la existencia de la relación empleado-patrono o de negar el despido, *el empleado tiene la obligación inicial de probar esto*. A esos efectos, debe prestar evidencia admisible que acredite la existencia de la relación empleado-patrono o la existencia del despido. Probado estos hechos, entonces se invierte el peso de la prueba hacia el patrono el cual tiene la obligación de establecer que el despido es uno justificado". Guía revisada, *Op. Cit.*, p. 49. Esto aplica igualmente a una causa de acción por despido constructivo que "sólo procede en aquellas instancias *donde la prueba demuestra* mediante inferencia razonable que la única alternativa del empleado es dejar su puesto". Zeno Santiago, *Op. Cit.*, p. 219. (Énfasis suplido).

V.

La Regla 39.2(c) de Procedimiento Civil regula la desestimación de un caso por insuficiencia de prueba de la siguiente manera:

> Después que la parte demandante haya terminado la presentación de su prueba, la parte demandada, sin renunciar a su derecho de ofrecer prueba en caso de que la moción sea declarada 'sin lugar', podrá solicitar la desestimación fundándose en que bajo los hechos hasta ese momentos probados y la ley, la parte demandante no tiene derecho a la concesión de remedio alguno. El tribunal podrá entonces determinar los hechos y dictar sentencia contra la parte demandante, o podrá negarse a dictar sentencia hasta que toda la prueba haya sido presentada.[68]

En una moción al amparo de la Regla 39.2(c), conocida como una moción contra la prueba o *non-suit*, el tribunal está autorizado, luego de la presentación de prueba por parte del demandante, a aquilatar la misma y a formular su apreciación de los hechos, según la credibilidad que le haya merecido la evidencia. Pero esa facultad debe ejercitarse después de un escrutinio sereno y cuidadoso de la prueba.[69] En caso de duda, debe requerirse al demandado que presente su caso.[70] En ese momento, le corresponde al tribunal determinar si la prueba presentada por la parte

---

[68] 32 L.P.R.A. Ap. V 39.2(c).

[69] Romero Arroyo y Otros v. E.L.A., 139 D.P.R. 576, 579 (1995).

[70] Roselló Cruz v. García, 116 D.P.R. 511, 520 (1985).

demandante es suficiente por sí misma para satisfacer los requisitos de su particular causa de acción.

Dado que la desestimación bajo la Regla 39.2(c) se da contra la prueba, la decisión del tribunal dependerá de su apreciación de la evidencia presentada. Es norma conocida en nuestra jurisdicción que los tribunales apelativos no intervendremos con la apreciación de la prueba hecha por los foros de instancia en ausencia de pasión, prejuicio, parcialidad o error manifiesto.[71] Sin embargo, ello no significa que haya inmunidad frente a la función revisora de los tribunales apelativos.[72] Además, dada la gravedad de una desestimación de la causa de acción, los tribunales deben ser cuidadosos al atender una moción al amparo de la Regla 39.2(c) pues conlleva el final de la reclamación de un demandante y de su día en corte. Se trata de una decisión que descansa en la sana discreción del tribunal.[73]

VI.

En el caso de autos, el señor Rivera Figueroa entabló una demanda al amparo de la Ley 80 alegando que fue víctima de un despido en su modalidad constructiva. Sostuvo que la mera presentación de la demanda al amparo de dicha Ley activaba la presunción de despido injustificado que ésta

---

[71] Monillor v. Soc. de Gananciales, 138 D.P.R. 600, 610 (1995).

[72] Méndez v. Morales, 142 D.P.R. 26, 36 (1996).

[73] Díaz v. Tribunal Superior, 93 D.P.R. 79, 83 (1966).

provee por lo que le correspondía al patrono demandado iniciar la presentación de la prueba. No tiene razón.

En primer lugar, para que un empleado demandante pueda aprovecharse de la presunción de despido injustificado que provee la Ley 80 tiene que demostrar, con prueba suficiente, el hecho base que da vida a la presunción: el despido. La Ley 80 no provee una presunción de que todo empleado que ya no trabaja en su antiguo lugar de trabajo fue despedido y que dicho despido fue injustificado. Tampoco provee para que la mera presentación de una causa de acción bajo la Ley o una alegación de que la renuncia fue, realmente, un despido constructivo, sea suficiente para revertir el peso de la prueba. El empleado demandante tiene el peso de la prueba *inicial* de demostrar al tribunal que, en efecto, ha ocurrido un despido. El peso inicial de la prueba en un caso al amparo de la Ley 80 le impone al empleado demandante la carga de establecer el hecho base, ya sea la cesantía, la suspensión mayor de tres meses o la renuncia equivalente a despido constructivo, que active la presunción de despido injustificado. Una vez activada la presunción de despido injustificado, el peso de la prueba se invierte y le corresponde al patrono demandado derrotar la misma. Si el patrono acepta el despido o si el empleado logra establecerlo en su turno inicial, le corresponde al patrono presentar su prueba.

Si se alega un despido en su modalidad constructiva, tiene que demostrarse al tribunal que la renuncia fue la

única alternativa razonable que tenía el empleado ante las condiciones de trabajo onerosas impuestas por su patrono con el propósito de inducir o forzar su renuncia. Por tanto, hasta que no demuestre ese hecho básico a satisfacción del tribunal, no se activará la presunción provista por la Ley 80. A la misma vez, ante el mandato constitucional y estatutario de proteger los derechos de los trabajadores y dado que el despido constructivo es un despido disfrazado que tiene la apariencia de una renuncia voluntaria, los tribunales de instancia deben ser sumamente cautelosos al momento de determinar si, en efecto, una renuncia fue forzada. Por tanto, es inmeritoria la alegación del señor Rivera Figueroa de que erró el Tribunal de Primera Instancia al ordenarle presentar prueba antes que al patrono demandado.

La parte demandante limitó su prueba inicial al testimonio del señor Rivera Figueroa en el sentido de que, en varias ocasiones, el demandado le intentó persuadir de firmar un contrato que modificaría su relación del trabajo con el patrono, de empleado a contratista independiente. No surge del expediente que esos intentos hayan sido intimidantes, atropellados o que haya mediado presión indebida. El peticionario también alegó en su testimonio que el trato que le ofrecían en su empleo tras rechazar la oferta del patrono no era el mismo, era hostil, le trataban de codo, no le daban los buenos días y le eliminaron algunos beneficios como una cena de vendedores y

privilegios relacionados con el estacionamiento. Por su parte, el patrono demandado alegó que el cambio de condiciones laborales fue para todos los vendedores y que no fueron de tal magnitud como para constituir un despido constructivo.

La primera alegación del patrono es inmeritoria. El estándar para determinar si una actuación opresiva por parte del patrono contra un empleado es de tal magnitud que le obliga a renunciar no depende de que sea únicamente contra él. Es posible que el patrono haya creado condiciones de trabajo aplicables a varios empleados que les fuerzan a todos a renunciar. De ese ser el caso, habría un despido constructivo independientemente de que no haya sido dirigido específicamente contra cada uno de ellos de manera particular. Para determinar si una actuación patronal es constitutiva de despido constructivo lo decisivo es si por ello una persona razonable se puede sentir y en efecto se siente forzada a renunciar, lo cual puede ser el producto de condiciones onerosas dirigidas contra él o contra varios empleados.[74] Por eso, el segundo argumento del demandado es el determinante, es decir, si el querellante presentó evidencia suficiente como para establecer que las condiciones impuestas por el patrono eran de tal magnitud como para equiparar la renuncia a un despido. En cuanto a esto, no hay nada en el expediente que nos permita alejarnos de la apreciación de la prueba hecha

---

[74] Incluso, en este caso, tres de once vendedores renunciaron.

por el foro de instancia. Sin duda, un trato frío en el lugar del trabajo y la cancelación de beneficios que ofrecía el patrono sin obligación a ello, como cenas a vendedores y privilegios de estacionamientos, resultan insuficiente para concluir que la única alternativa razonable para el señor Rivera Figueroa era renunciar.

Al no demostrarse a satisfacción del juzgador el hecho básico de que la renuncia era un despido constructivo, nunca se activó la presunción de despido injustificado que provee la Ley 80. Evidentemente, tampoco se invirtió el peso de la prueba y el demandante tenía la carga de probar su caso sin recurso a presunción alguna. El foro de instancia determinó que, ausente la presunción y ante la prueba presentada por el demandante, éste no tenía derecho a la concesión de los remedios solicitados. No encontramos base en el récord para alterar esa conclusión.

Como consecuencia, actuó correctamente el Tribunal de Primera Instancia al desestimar la causa al amparo de la Regla 39.2(c) de Procedimiento Civil, como también resolvió correctamente el foro apelativo al confirmar esa decisión.

Por los fundamentos expuestos, se confirma la Sentencia del Tribunal de Apelaciones.

Se dictará sentencia de conformidad.

Liana Fiol Matta
Jueza Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Félix A. Rivera Figueroa

      Peticionario

        v.

The Fuller Brush Co. of P.R.,
Inc.; Compañía de Seguros A, B
y C; Querellados desconocidos
X y Y

      Recurridos

*Certiorari*

CC-2006-1010

SENTENCIA

En San Juan, Puerto Rico, a 23 de febrero de 2011.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte integrante de la presente Sentencia, se confirma la sentencia del Tribunal de Apelaciones.

Lo pronunció y manda el Tribunal y lo certifica la Secretaria del Tribunal. El Juez Asociado señor Martínez Torres y la Jueza Asociada señora Pabón Charneco concurren con el resultado, sin opinión escrita, por lo expuesto en la Parte VI de la Opinión del Tribunal. El Juez Asociado señor Rivera García concurre con el resultado sin opinión escrita.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo